IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



SHARON M. WOODWARD,

    Plaintiff,

v.                                                                    Civil Action No. CV-00-J-1384-S

TOGO D. WEST, JR., SECRETARY
OF VETERANS AFFAIRS,

    Defendants.

**ENTERED**

OCT 1 0 2001

## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment (doc. 14), evidentiary materials in support of its motion (doc. 15), and memorandum of law. The plaintiff submitted a brief in opposition thereto with supporting evidentiary materials (doc. 20). The court has reviewed the motion, the memoranda of law, and the evidentiary submissions of the parties.

### I. Procedural History

Plaintiff commenced this action on May 23, 2000 by filing a complaint (doc. 1) alleging that defendant discriminated against her on the basis of her race (black) and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"). Plaintiff filed an amended complaint (doc. 3) on August 9, 2000,



apparently deleting her claim of sex discrimination.[1] Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the defendant's motion for summary judgment is due to be granted.

## II. Factual Background

Plaintiff began working at the Birmingham Veterans Administration's radiology department ("VA") in 1991, after transferring from the Chicago VA. Plaintiff was hired by Gary Coley, the Chief Technologist and general supervisor of technologists in the radiology service. *See* Declaration of Gary Coley at ¶¶ 2, 15. Coley became plaintiff's supervisor. Sometime between 1992-94, Coley promoted plaintiff to the position of angiographer, special procedures. *See* Plaintiff's Exhibit B1, Affidavit of Sharon Woodward, initial disclosures at 84; *cf.* Plaintiff's Exhibit B2, Affidavit of Gary Coley, initial disclosures at 153, 159.[2]

In 1998, plaintiff, while working as an angiographer technologist at the GS 8/9 level, applied for two open positions. The first position was as a Diagnostic Radiologic Technologist CT (computed tomography), which was at the GS-8 level ("CT position"). *See* Declaration of Gary Coley at ¶ 4. The second position was as a Diagnostic

---

[1]The court notes the that there is no Title VII sex discrimination claim when plaintiff and the applicants hired are all female. Therefore, plaintiff's amended complaint is interpreted as deleting the sex discrimination claim.

[2]The initial disclosures are part of the evidence submitted by plaintiff in opposition to this motion.

Radiologic Technologist with duties entailing 50% ultrasound work and 50% quality assurance/quality control work ("ultrasound position"). Written criteria were not used to evaluate the applicants. *See* Declaration of Gary Coley at ¶¶ 8, 23. Instead, Coley and Carolyn Chamblee, the Assistant Chief Technologist, decided that hiring for the position would be based upon certain criteria. *Id.*

In discussing the CT position, Coley and Chamblee decided that the criteria by which they would evaluate applicants would be 1) experience; 2) performance appraisals; 3) productivity; and 4) attitude toward work and patients. *See* Declaration of Gary Coley at ¶ 8; Plaintiff's Exhibit B2, Affidavit of Gary Coley at 139-41. Hiring for the ultrasound position would be based upon 1) experience in checking radiographic films; 2) experience with computers; and 3) productivity. *See* Declaration of Gary Coley at ¶ 23; Declaration of Carolyn Chamblee at ¶ 13; Plaintiff's Exhibit B2, Affidavit of Gary Coley at 150-151.

Coley and Chamblee then decided that they would not conduct interviews for the positions because the hiring supervisors knew all applicants and because of an urgent need to fill the CT position. *See* Plaintiff's Exhibit B2, Affidavit of Gary Coley at 137-38; Declaration of Gary Coley at ¶ 6. Plaintiff, though deemed qualified for both positions, failed to receive an offer for either. Instead, Coley and Chamblee offered the positions to two Caucasian women.

Defendant claims it evaluated applicants for the CT position based upon the four

criteria listed above. Teresa Ragan, the applicant hired, was the only applicant with prior experience using a CT scan. *See* Declaration of Gary Coley at ¶ 15; Plaintiff's Exhibit B2, Affidavit of Gary Coley at 138-39, 142, 145. Ms. Ragan ranked better on performance appraisals, had higher productivity, and had a better attitude towards work and patients than plaintiff. *See* Declaration of Gary Coley at ¶¶ 16-18; Declaration of Carolyn Chamblee at ¶¶ 8-10; Plaintiff's Exhibit B2, Affidavit of Gary Coley at 138-49.[3]

In their declarations supporting the motion for summary judgment, supervisors Coley and Chamblee stated that experience mattered in filling the CT position. The radiology department had an immediate need to fill the CT position. *See* Declaration of Gary Coley at ¶¶ 6, 9, 15; Declaration of Carolyn Chamblee at ¶¶ 6-7. Plaintiff had no experience with CT scans and the VA needed her to remain in her position as an angiographer because the department "needed experienced people there." Declaration of Gary Coley at ¶ 29.

Coley and Chamblee evaluated the applicants for the ultrasound position differently, this time using three criteria listed above. Coley and Chamblee believed that the person hired for this position, Joline Burton, had more experience with computers, and that she had a better productivity record than plaintiff. *See* Declaration of Gary Coley at ¶¶ 26, 27; Declaration of Carolyn Chamblee at ¶ 14. Additionally, the position was

---

[3]Plaintiff and defendant submit plaintiff's and her fellow applicants' performance appraisals and their productivity records in their evidentiary submissions.

listed as 50% ultrasound, 50% quality assurance. Quality assurance involved working on what employees of the hospital referred to as the "light side." This part of the job entailed evaluating the x-rays, "making sure they come out okay" because the doctors would have to read them as part of their diagnosis. *See* Plaintiff's Exhibit B1, Affidavit of Sharon Woodward at 88.

Plaintiff stated that she did not like working in quality assurance/quality control because it was not her job. *Id.* at 89. She admits that she may have mentioned her dislike of the work to her supervisors. *Id.* at 89. In reviewing the applicants, Coley and Chamblee considered plaintiff's statements and were aware of plaintiff's apparent dislike of the quality assurance, quality control aspects of the ultrasound position. *See* Declaration of Gary Coley at ¶ 25; Declaration of Carolyn Chamblee at ¶ 16; Plaintiff's Exhibit B2, Affidavit of Gary Coley at 154-55.

### III. Standard of Review for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary

> judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.

*See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### IV. Legal Analysis

Plaintiff contends that her failure to receive a promotion constitutes racial discrimination. The plaintiff provides no direct evidence of discrimination. A Title VII plaintiff offering no direct evidence of discrimination may proceed under the statutes with circumstantial evidence. In evaluating whether such a plaintiff has offered sufficient circumstantial evidence to create a genuine issue of fact to be submitted to a jury, the Court shall apply the familiar legal framework outlined in *McDonnell Douglas* and its progeny. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089 (1981); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir. 1991). Under this

framework, the Plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1824.

According to the *McDonnell Douglas* framework, plaintiff must first establish a prima facie case of race discrimination under Title VII by showing that (i) she is a member of a protected class; (ii) applied for and was qualified for the position; (iii) that despite her qualifications she was rejected; and (iv) the position was filled with someone outside the protected class. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). Establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997).

In this case, it is undisputed that plaintiff met her burden of establishing a prima facie case of discrimination. *See* Defendant's Memorandum in Support of Motion For Summary Judgment at 8. Plaintiff is black, she was qualified for the position, she was rejected despite her qualifications, and the applicants awarded the positions were Caucasian.

The establishment of the prima facie case creates a presumption of unlawful discrimination, a presumption that causes the burden of production to shift to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506-07, 113 S.

8

Ct. 2742, 2747 (1993); *see also Burdine,* 450 U.S. at 254, 101 S. Ct. at 1094. The burden of production is satisfied where the evidence offered by defendant "raises a genuine issue of fact as to whether it discriminated against Plaintiff." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (*citing Burdine,* 450 U.S. at 254, 101 S. Ct. at 1094). "This burden is one of production, not persuasion; 'it can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2106 (2000) (citing *St. Mary's Honor Center*, 509 U.S. at 509, 113 S. Ct. 2742).

Coley and Chamblee stated, in essence, that Ragan and Burton met their hiring criteria better than plaintiff. In addition, the defendant had an immediate need to fill its CT position, the Ultrasound position required work that plaintiff apparently disliked, and defendant needed plaintiff in her position as an angiographer. The defendant presented well articulated legitimate reasons for its employment decisions which show that racial animus had nothing to do with the decision making. The plaintiff argues that some of the hiring criteria were subjective. Subjective reasons for hiring one applicant over another can be a legally sufficient, non-discriminatory reason for an adverse employment action. *See Chapman v. AI Transport*, 229 F.3d 1012, 1035-36 (11th Cir. 2000).

The court finds that plaintiff has failed to provide any evidence, outside of her own affidavit, that the defendant's legitimate, non-discriminatory reasons for its actions were a pretext for discrimination. *See Reeves,* 530 U.S. at 146-47, 116 S. Ct. at 2108; *Coutu v. Martin County Bd. of Com'rs*, 47 F.3d 1068, 1073-74 (11th Cir. 1995). As such, the

9

court finds that the defendant is entitled to summary judgment.

## V. Conclusion

The court, finding that there are no genuine issues of material fact in dispute, **ORDERS** that the defendant's motion for summary judgment is hereby **GRANTED**. The plaintiff's claims are **DISMISSED WITH PREJUDICE.** Each party is to bear its own costs.

DONE this 10 day of October, 2001.

INGE P. JOHNSON
U.S. DISTRICT JUDGE